USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/14/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- X
UNITED STATES OF AMERICA,                    :
                                             :          10-CR-892 (VEC)
            -against-                         :
                                             :          OPINION
JUAN CARLOS FERRERA,                         :
                                             :
                         Defendant.          :
-------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

      Juan Carlos Ferrera ("Petitioner" or "Defendant") was convicted in 2013 of conspiracy to distribute and possess with intent to distribute a detectable amount of marijuana. Judgment, Dkt. 307. He has filed a petition for a writ of error *coram nobis* to vacate his conviction. Petition, Dkt. 359. Ferrera, a citizen of Cuba and a legal permanent resident ("LPR") of the United States, alleges that he received ineffective assistance of counsel in violation of the Sixth Amendment because his attorney provided erroneous advice with respect to the immigration consequences of his guilty plea. *Id.* Ferrera contends that the erroneous advice fell below an objective standard of reasonableness and that he was prejudiced. The Government opposes Ferrera's petition. For the reasons discussed below, the Court grants Ferrera's petition for a writ of error *coram nobis* and vacates his conviction. The Court hereby stays the issuance of the writ to Friday, January 22, 2021, to give the parties additional time to discuss next steps in light of this Opinion.

## I.   Background

      Ferrera fled Cuba to the United States in 2002 and became an LPR in 2005. Petition, Dkt. 359 at 2; Ferrera Aff., Ex. A, Dkt. 359-1 ¶ 3; Hearing Tr., Dkt. 380 at 45–46, 61:5-16. After a short time in Florida, Ferrera moved to New York, where he continues to live with his wife and son, both of whom are U.S. citizens. Petition, Dkt. 359 at 2. For the past 18 years,

Ferrera has worked as a cleaner for the same company, Murray Floor Waxing.  Ferrera Aff. ¶ 2; Hearing Tr. at 46–47.

On August 31, 2010, Ferrera was arrested.  Dkt. 17.   He was charged alongside 17 other defendants, most of whom were indicted and eventually convicted of conspiracy to distribute and to possess with intent to distribute cocaine.  Ferrera was indicted only for conspiracy to distribute and possess with intent to distribute marijuana.  Indictment, Dkt. 79.  Soon after his arrest, Ferrera retained private counsel, Mark Silverman.  Silverman Decl., Ex. C, Dkt. 359-1 ¶ 1. Ferrera contends that Silverman did not inform him that a guilty plea to the charges in the indictment would result in mandatory deportation.  Ferrera Aff. ¶ 7.  Silverman recalls telling Ferrera that because the United States lacked diplomatic relations with Cuba, he would be in "better shape" than non-Cuban nationals convicted of drug violations and that this was "clearly in his favor."  Hearing Tr. at 6.  Silverman appeared to assuage Ferrera's concerns about deportation, especially as Ferrera was aware that the U.S. Government was not deporting Cubans at the time.  Ferrera Aff. ¶ 9.  After plea negotiations with Assistant United States Attorney Justin Anderson, Ferrera pled guilty to a lesser-included offense of Count Two of the Superseding Indictment, conspiracy to distribute and possess with intent to distribute a detectable amount of marijuana.  Superseding Indictment, Dkt. 149; Plea Hearing Tr., Dkt. 252 at 5.  Like the charge in the indictment (which charged conspiracy to distribute and possess with intent to distribute at least 50 kilograms of marijuana), the lesser included offense to which Ferrera pled is an aggravated felony under the immigration laws.  *See* 8 U.S.C. § 1101(a)(43).  On October 8, 2013, Ferrera was sentenced by the Hon. Debra Batts (now deceased) to time served and 3 years of supervised release.  Sentencing Tr., Dkt. 312 at 10.

In late 2015, Ferrera called Silverman to ask whether his criminal conviction would affect his green card renewal application.  Silverman told him that he "did not see any problem" with Ferrera renewing his green card.  Silverman Decl., ¶ 4.  In January 2016, Ferrera received a new green card.  Petition at 6.  On March 3, 2016, however, Ferrera was arrested by Immigration and Customs Enforcement ("ICE") agents.  He was held in ICE detention for six months.  *Id.* at 6–7; Ferrera Aff. ¶¶ 12–14.

In the summer of 2019, Ferrera's immigration counsel referred him to pro bono counsel who is representing him in this case.  Petition at 7; Ferrera Aff. ¶ 15.  Ferrera alleges that this was the first time he became aware of the possibility of moving to vacate his conviction by seeking *coram nobis* relief.  *Id.*  On October 29, 2019, Ferrera filed a petition for a writ of error *coram nobis*.  Petition.  The Government opposed the Petition.  Dkt. 366.  On September 8, 2020, an evidentiary hearing was held.  Dkt. 380.

## II.   Discussion

### A.  Legal Standard

A petition for a writ of error *coram nobis* is "a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."  *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998).  The writ should issue only where "extraordinary circumstances are present."  *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (quoting *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992)).

To be entitled to relief, the petitioner must demonstrate that "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction

that may be remedied by granting of the writ." *Id.*  With respect to the first prong, ineffective

assistance of counsel in violation of the Sixth Amendment is a circumstance that compels

granting the writ to achieve justice.  *Doe v. United States*, 915 F.3d 905, 910 (2d Cir. 2019); *see*

*also Rodriguez v. United States*, 730 F. App'x 39, 42 (2d Cir. 2018); *Kovacs v. United States*,

744 F.3d 44, 49 (2d Cir. 2014); *Chhabra v. United States*, 720 F.3d 395, 406 (2d Cir. 2013).

Under *Strickland v. Washington*, to prove ineffective assistance of counsel, the petitioner must

show (a) that counsel's performance fell below an objective standard of reasonableness and (b)

prejudice.  466 U.S. 668, 687 (1984).

## B.  Ineffective Assistance of Counsel

### 1.  Did Counsel Provide Objectively Reasonable Representation?

In the immigration context, if defense counsel provides "false assurance that [a

defendant's] conviction would not result in removal," the representation is not objectively

reasonable.  *Padilla v. Kentucky*, 559 U.S. 356, 368–71 (2010).  *See also Rodriguez*, 730 F.

App'x at 42 ("Rodriguez's counsel's 'alleged advice that she need not worry about immigration

consequences . . . [fell] below an objective standard of reasonableness.'").  Even advice that a

defendant "may" be deported when deportation is mandatory is not objectively reasonable.

*United States v. Al Halabi*, 633 F. App'x 801, 803 (2d Cir. 2015).

Ferrera contends that he was never told that a conviction for the lesser included offense to

which he pled guilty would result in mandatory deportation.  Ferrera Aff. ¶ 7.  Silverman does

not dispute Ferrera's account; he was aware that Ferrera's "primary goal was to remain with his

family" in the United States, but Silverman seemed to think that, as a Cuban, Ferrera would not

be deported.  Silverman Aff. ¶ 3; Hearing Tr. 6.  Silverman appears to have maintained this

viewpoint until at least 2015, when he told Ferrera that he "did not see any problem" with him

renewing his green card, despite the conviction.  Silverman Aff. ¶ 4.  The Government does not contest this account; instead, it assumes without conceding that Silverman either affirmatively misadvised or failed to advise Ferrera of the immigration consequences of his guilty plea, in violation of *Padilla v. Kentucky*, 559 U.S. 356 (2010).  Gov. Response, Dkt. 366 at 5.

The Court finds that no matter how understandable Silverman's advice was given the long-standing track record of the U.S. Government not deporting Cuban nationals, his failure to clearly inform Ferrera that his guilty plea would subject him to mandatory deportation constitutes objectively unreasonable representation.

### 2.  Was Petitioner Prejudiced?

To assess whether a petitioner was prejudiced, courts must carry out a "case-by-case examination" of the "totality of the evidence."  *Rodriguez*, 730 F. App'x at 43 (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000) and *Strickland*, 466 U.S. at 695).  This examination follows a two-part inquiry.  First, "[a]s a predicate matter, a petitioner alleging ineffective assistance based on immigration misadvice must 'clearly demonstrate that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty.'"  *Doe v. United States*, 915 F.3d 905, 911 (2d Cir. 2019) (quoting *Kovacs*, 744 F.3d at 52); *see also Rodriguez*, 730 F. App'x at 43 (same).[1]  In this evaluation, courts "cannot rely solely on 'post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies'; [they] must also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.'"  *Doe*, 915 F.3d at 912 (citing *Jae Lee*, 137 S. Ct. at 1967).  Such contemporaneous evidence includes whether defendants raised their immigration concerns with counsel, their history in the United

---

[1]    In *Doe*, the Second Circuit confirmed that this part of the inquiry survived the Supreme Court's 2017 decision in *Jae Lee v. United States*.  *Doe v. United States*, 915 F.3d 905, 912 n.3 (2d Cir. 2019) (citing *Jae Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)).

States, their family circumstances, and any gainful employment in the United States.  *Id.*  The second prong of the inquiry requires petitioners to demonstrate that "'but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status *or* that he would have litigated an available defense.'"  *Doe*, 915 F.3d at 911 (citing *Kovacs*, 744 F.3d at 52) (emphasis added); *see also Rodriguez*, 730 F. App'x at 43 (same).

Ferrera has satisfied both parts of this inquiry.  First, he placed particular emphasis on immigration consequences in deciding whether to plead guilty.  At the evidentiary hearing, Silverman testified that Ferrera approached him with two major concerns: "One was his immigration status and staying in the United States, and the other was staying out of jail." Hearing Tr. at 5:20-25.  Ferrera himself testified that he "always asked [Silverman] about his immigration status, and he would say — he said — he always said everything was fine because, well, [Ferrera] was Cuban and [he] had no deportation order, so everything was fine."  *Id.* at 48:5-10.

Moreover, Ferrera's extensive ties to the United States leave "no reason to doubt the paramount importance [Ferrera] placed on avoiding deportation." *Jae Lee*, 137 S. Ct. at 1968. In *Jae Lee*, the Supreme Court found ineffective assistance of counsel after noting that the petitioner had lived in the U.S. for nearly three decades, had two businesses, and was the only family member able to care for his U.S. citizen parents.  *Id*.  Similarly, in *Rodriguez*, the Second Circuit remanded on the issue of prejudice, noting the petitioner's thirteen years in the United States, longstanding employment, and support for family.  730 F. App'x at 44.  As in those cases, Ferrera has a strong connection to the United States.  He has lived in the U.S. for eighteen years, he has a U.S. citizen wife and son, he has been gainfully employed by the same company for the

last eighteen years,[2] and he pays taxes.  Petition, Dkt. 359 at 2; Ferrera Aff. ¶ 2; Hearing Tr. at

44–47.  At his sentencing, both Ferrera and Silverman spoke about the importance of family to

Ferrera, reaffirming his connection to his loved ones in the United States.  Sentencing Tr. at 4, 6–

7.  Without a doubt, Ferrera has demonstrated his connection to the United States, further

confirming the particular emphasis Ferrera placed on the immigration consequences of his guilty

plea.

The Government argues that Ferrera emphasized avoiding incarceration and that his

failure to raise immigration concerns at his plea hearing and sentencing demonstrates that he did

not place particular emphasis on the immigration consequences of his plea.  Gov. Response at 6.

Ordinarily the Court would agree that the failure to mention immigration concerns at plea or

sentencing would be fairly persuasive evidence that such consequences were not a significant

concern.  But, in this case, it makes sense that Ferrera would not raise immigration concerns

during those proceedings, as he had been told by his attorney that immigration issues would "not

be a problem," Hearing Tr. at 48:1-10, and, as a matter of geopolitics, the United States was not

deporting people to Cuba, a policy that had lasted decades with no suggestion that it would

change.  As in *Rodriguez*, Ferrera would have placed "paramount importance" on the

immigration consequences at such proceedings and during plea negotiations "had [he] known

that was a possibility."  *Rodriguez*, 730 F. App'x at 44.  In fact, Ferrera's failure to raise the

immigration consequences at both his plea hearing and sentencing are not surprising given

counsel's early assurances that there should be no immigration consequences to worry about.

---

[2]       Though not contemporaneous evidence, the Court notes Ferrera's strong connection with his employer, whom he spoke with on his way home from his six-months detention by ICE; his employer invited him back to work the very next day.  Hearing Tr. at 49–50.

Ferrera also meets the second prong of the inquiry, which requires a showing that but for counsel's errors, there is a reasonable probability the petitioner would have negotiated a different plea or would have litigated an available defense. *Doe*, 915 F.3d at 911. As an initial matter, in his affidavit, Ferrera swore that he would not have pled guilty to the charge to which he pled had he known the immigration consequences. He stated: "Had I understood that I would face mandatory deportation as a result as a result [sic] of my guilty plea, I would have risked going to trial or instructed my attorney to attempt to secure a plea that did not have immigration consequences. I would never have agreed to do something that would result in my forcible separation for [sic] son, my wife, my community and my job." Ferrera Aff. ¶ 16.

With respect to the plea negotiations, the Government argues that it had a strong case against Ferrera, making it unlikely that he could have negotiated a better plea. Gov. Response at 6. The Court agrees with the Government that, given the strength of the case against Ferrera, it is highly unlikely that he would have been able to negotiate a charge of misdemeanor possession of marijuana, an offense that does not require mandatory deportation. Hearing Tr. 22:10-25, 23:1-2. The Court also agrees that Ferrera lacked knowledge of the larger cocaine conspiracy, meaning that he would have been unable to trade cooperation for a better deal. *Id.* at 25:14-25.

But Ferrera may have been able to negotiate a deal to plead guilty to an offense like money laundering or misprision of a felony, which does not require mandatory deportation. Ferrera submitted a Declaration by the AUSA with responsibility for the prosecution, Justin Anderson.[3] Anderson claims that he reached pleas of misprision of a felony and money laundering in narcotics trafficking cases while he was an AUSA, although he also states that he does not recall all the facts and circumstances of those cases. Anderson Aff., Dkt. 376 ¶ 5. At

---

[3]     Mr. Anderson has since left the U.S. Attorney's Office and is now in private practice. Anderson Aff., Dkt. 376 ¶ 1.

the hearing, Ferrera's counsel noted that misprision is a class E felony and money laundering is a class C felony; the offense to which Ferrera pled guilty was a class E felony.  Hearing Tr. 67:14-23.  The Court also finds that Ferrera testified credibly at the hearing that he would have been willing to plead to such offenses, even if they would have increased the likelihood of him serving time in prison, to avoid deportation.  *Id.* at 54:8-12, 55:7-10, 60:21-25, 61:1-4.

The Government argues in response that pleading to such offenses was never on the table.  *Id.* at 26:19-25, 27:1-7.  But this argument is unconvincing; Ferrera and his counsel only would have suggested pleading to such offenses had they entered the negotiations with an eye towards avoiding mandatory deportation.  Ferrera has demonstrated that those immigration concerns had been assuaged by his counsel's inaccurate advice that Cuban nationals with marijuana convictions do not need to worry about deportation.

Additionally, the Government may have been willing to accept a creative plea disposition given Ferrera's unique situation as a marijuana dealer in a large cocaine case and as a relatively minor player for whom deportation could have been seen as disproportionate punishment.  Moreover, when Ferrera pled guilty on February 20, 2013, thirteen of his seventeen co-defendants had already pled guilty.  Plea Hearing Tr., Dkt. 252; Docket 10-CR-892.   Perhaps the Government would have considered such a deal to resolve the "tip of the tail of the dog" in a larger case that had been ongoing for three long years.  Hearing Tr. 84–85.

While the prejudice test in this context only requires that the petitioner demonstrate that he would have negotiated a different plea *or* that he would have litigated an available defense, Ferrera also has met the second option, by credibly testifying that he would have litigated defenses at trial.  This inquiry focuses on whether the defendant would have gone to trial; the Supreme Court has clarified that courts "do not ask whether, had he gone to trial, the result of

that trial 'would have been different' than the result of the plea bargain." *Jae Lee*, 137 S. Ct. at

1965.  The Supreme Court further explained:

> The decision whether to plead guilty also involves assessing the respective
> consequences of a conviction after trial and by plea.  When those consequences
> are, from the defendant's perspective, similarly dire, even the smallest chance of
> success at trial may look attractive.  For [the petitioner], deportation after some
> time in prison was not meaningfully different from deportation after somewhat
> less time; he says he accordingly would have rejected any plea leading to
> deportation in favor of throwing a "Hail Mary" at trial.

*Id.* at 1961.  As long as a court is persuaded that the petitioner would have gone for the longshot,

however unlikely it was to succeed, this prong of the inquiry is met.

Here, the Government argues that Ferrera did not identify any triable defense, especially

given the strong evidence, including wiretaps, surveillance photos, and a confidential informant,

that the Government had.  Gov. Response at 6; Hearing Tr. 31–32.  The Court acknowledges that

the case against Ferrera was strong.  Silverman, Ferrera's counsel at the time, notes that he could

have argued that Ferrera was not the individual on the wiretaps or in the surveillance photos.  He

also could have argued that because Ferrera never used the word "marijuana" during the

recorded calls, the Government could not have proven beyond a reasonable doubt that Ferrera

was actually talking about marijuana.  Hearing Tr. 9:23-25; 10:1-4.  No reasonable attorney

would conclude that the probability of success of such trial defenses is high.  But it does not have

to be.  As in *Jae Lee*, such defenses would have been nothing more than a "Hail Mary" pass, 137

S. Ct. at 1961, but Ferrera's credible testimony that he would have taken the longshot is legally

sufficient under *Jae Lee*.

As Ferrera placed particular emphasis on the immigration consequences of his plea and

as he would have negotiated a different plea deal or gone to trial, the Court concludes that he

suffered prejudice as a result of the ineffective assistance of counsel he received.

**3.   Was Prejudice Cured by the Plea Agreement and Plea Colloquy?**

The Government argues that even if Ferrera received ineffective assistance of counsel, any resulting prejudice was cured by statements found in the plea agreement and by the Court's advice of rights during the plea colloquy.  Gov. Response at 1–2, 7.

Ferrera's plea agreement included the following paragraph:

> The defendant recognizes that because he is not a citizen of the United States, his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences. The defendant acknowledges that he has discussed the possible immigration consequences (including deportation) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States.

Plea Agreement, Ex. E, Dkt. 359-1, at 5.

The Court finds that this paragraph does not cure the ineffective assistance of counsel that Ferrera received.  First, Ferrera, acting on the advice of counsel, may have reasonably understood this paragraph not to apply to his unique circumstances.  In *Doe,* the Second Circuit reversed the district court's denial of the defendant's *coram nobis* petition, even though the petitioner pled guilty pursuant to a plea agreement that similarly warned about immigration consequences.  *Doe*, 915 F.3d at 912.  The Second Circuit found it significant that defense counsel had "soft-peddled the warning in the agreement as a possible penalty that was put in all agreements for people who were not citizens."  *Id.*  While Silverman could not remember exactly what he said when he met with Ferrera to review the plea agreement, he "may have told him [the immigration paragraph] was boilerplate."  Hearing Tr. 36:17-25.  Moreover, Silverman's continued advice that Ferrera's immigration issues would "not be a problem" presumably ameliorated any of Ferrera's concerns about this paragraph.  *Id.* at 48:1-10.

11

Second, this paragraph in the plea agreement could not be curative of his counsel's erroneous advice as it is inaccurate. The agreement states that his "guilty plea and conviction make it *very likely* that his deportation from the United States is presumptively mandatory." Plea Agreement at 5 (emphasis added). But an aggravated felony conviction makes mandatory deportation certain, not "very likely." *See* 8 U.S.C. § 1101(a)(43). Even assuming that Ferrera had carefully reviewed this paragraph with counsel, he reasonably may have understood that, as a Cuban national, he was the exception to the rule that made deportation "very likely" but not certain. At the time of Ferrera's conviction, the United States was not deporting Cubans in large numbers, and Ferrera was very much aware of that fact. *See* Petition at 13–14, n.7; Ferrera Aff. ¶ 9. Given Ferrera's circumstances as a Cuban national, the Court finds that the boilerplate immigration paragraph in the plea agreement did not cure the ineffective assistance of counsel that Ferrera received.

Similarly, Judge Batts' advice of rights at the plea allocution did not cure the ineffective assistance of counsel. At the hearing, Judge Batts said to Ferrera:

> And if you are not a citizen of the United States and I accept your guilty plea and adjudge you guilty, that adjudication will subject you to deportation and/or deprive you of the right to apply for United States citizenship or to reenter this country. Do you understand that?

Plea Hearing Tr. at 11. Ferrera replied "Yes." *Id.* Relying on advice of counsel, Ferrera could have easily thought that this question did not apply to his circumstances, given his status as a Cuban national and his lawyer's assurances that he would not be deported. Petition at 13; Ferrera Aff. ¶¶ 9–10. Ferrera alleges that he thought the "court appearance was a formality" and that his attorney's advice that he would not be deported remained true. Ferrera Aff. ¶ 10.

Additionally, like the paragraph in the plea agreement, Judge Batts' statement did not foreclose prejudice because it was not completely accurate. Judge Batts listed potential

immigration consequences using the conjunctions "and/or." Plea Hearing Tr. at 11. This implies that the listed immigration consequences were not all mandatory, which is untrue because the offense is an aggravated felony. Petitioner Reply, Dkt. 369 at 2; 8 U.S.C. § 1101(a)(43). In *Doe*, the Second Circuit found that a warning as to possible deportation was insufficient when the actual consequence was presumptively mandatory deportation. 915 F.3d at 913 ("[N]owhere during the colloquy did the court inform Doe that the crime to which he was pleading guilty constituted an aggravated felony, or what the mandatory consequences of pleading to an aggravated felony would be."). *See also Rodriguez*, 730 F. App'x at 40 (remanding on prejudice even though the defendant replied yes to the question "do you understand that by pleading guilty to these charges and because you're not a citizen of the United States . . . you are subject to being deported and that in all likelihood you will be deported?").

Taken together, under the unusual circumstances of a Cuban national pleading guilty at a time when the Government was deporting virtually no one to Cuba, neither the immigration paragraph in the plea agreement nor Judge Batts' advice of rights during the plea colloquy cured the ineffective assistance of counsel Ferrera received in violation of the Sixth Amendment.

### C. Timeliness of the Requested Relief

In addition to demonstrating circumstances compelling issuance of the writ to achieve justice, a petitioner must also show that sound reasons exist for his failure to seek appropriate relief earlier. *Foont*, 93 F.3d at 79 (quoting *Nicks*, 955 F.2d at 167).

While a petitioner must demonstrate his reasons for any delay in bringing the action, there is no statute of limitations setting the date by which a writ of error *coram nobis* must be filed. *Doe*, 915 F.3d at 915 (citing *Kovacs*, 744 F.3d at 54). Instead, the "critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay." *Id.* (quoting *Foont*, 93

F.3d at 79–80) (internal citations omitted).  In *Kovacs*, the defendant was an Australian national

who was sentenced in 2001 to five years of probation.  744 F.3d at 48.  In 2009, well after his

probation was complete, Kovacs became aware of the immigration consequences of his

conviction when immigration officials questioned him about his eligibility to reenter the United

States.  *Id.* at 49.  He then sought the advice of immigration counsel, who advised him in 2011 of

the possibility of *coram nobis* relief.  *Id.*  The Second Circuit found his petition timely, even

though more than a decade had passed since his conviction.  *Id.* at 54.  The Second Circuit held

that "it is improbable that Kovacs (or whatever attorney he consulted) would have promptly

thought about *coram nobis*, which is as arcane as it is ancient."  *Id.* (citing *United States v.*

*Morgan*, 346 U.S. 502, 511 (1954)).  The court further noted that the government failed to

provide any "tactical reason" why Kovacs would have delayed filing the writ if he had known

about it earlier.  *Id.*

Like in *Kovacs*, Ferrera's petition for a writ of error *coram nobis* was timely.  Ferrera

became aware of the immigration consequences of his conviction in 2016 when he was arrested

by ICE.  Petition at 6–7; Ferrera Aff. ¶¶ 12–14.  He only found out about the writ from his

immigration counsel in 2019, when he was referred to his current pro bono counsel who filed the

petition soon after.  Ferrera Aff. ¶ 15.  The Court finds that Ferrera filed his petition as soon as

he became aware it was a possibility and had secured pro bono counsel willing to assist him in

the matter.  The Government argues that there were no sound reasons for the three-year delay

between his arrest by ICE and his filing of the writ.  Gov. Response at 8.  But the Government

failed to provide any "tactical reason" why Ferrera would have delayed his filing; had he known

about it earlier, he presumably would have filed the petition while in ICE detention.  Petition at

15.  And his immigration counsel cannot be blamed for the three-year delay because, as the

Second Circuit noted in *Kovacs*, *coram nobis* is as arcane as it is ancient.

    None of the reasons provided by courts for denying the writ as untimely applies here.  In

*Chhabra*, the Second Circuit found the petition to be untimely because the petitioner knew of the

immigration consequences before he pled guilty.  *Chhabra*, 720 F.3d at 411.  Ferrera contends

that not only did he not know of the immigration consequences, he affirmatively understood

from his counsel that there would be none in his case.  In *Rodriguez-Hilario*, the Second Circuit

found the writ untimely because the petitioner provided no sound reason for a 12-year delay.

*United States v. Rodriguez-Hilario*, 699 F. App'x 30, 31 (2d Cir. 2017).  Ferrera provided sound

reasons for his delay: he had no reason to file until he learned of the immigration consequences

of his conviction when he was arrested in 2016, and he filed his petition in 2019, just after he

learned it was a possibility.

    Given that Ferrera provided sound reasons for any delay in filing his petition for a writ of

error *coram nobis* and there is no evidence that his delay was tactical, the Court finds his petition

to be timely.

### D.  Petitioner Continues to Suffer Legal Consequences from His Conviction

    The remaining prong of the writ of error *coram nobis* test requires the petitioner to

demonstrate that he "continues to suffer legal consequences from his conviction that may be

remedied by granting of the writ."  *Foont*, 93 F.3d at 79 (quoting *Nicks*, 955 F.2d at 167).  To

meet this criterion, a "petitioner must at least point to a concrete threat that an erroneous

conviction's lingering disabilities will cause serious harm."  *Fleming*, 146 F.3d at 91 (quotation

omitted).  Immigration consequences qualify.  *See Kovacs*, 744 F.3d at 49 ("There is no doubt

that [defendant's] likely ineligibility to renter the United States constitutes a continuing consequence of his conviction.").

The Government points out that Ferrera's petition is silent about whether his immigration consequences remain pending.  Gov. Response at 5, n.2, Dkt. 366.  In his reply, Ferrera clarified that he "is subject to a final order of deportation, stayed only while his claim under the Convention Against Torture is waiting to be heard."  Petitioner Reply at 1, Dkt. 369.  The stay does not erase the legal consequences Ferrera is facing.  *See Doe*, 915 F.3d at 910 n.2 ("The fact that his deportation proceedings have been administratively stayed does not alleviate these legal consequences, as Doe is still unable to apply for citizenship and remains subject to mandatory removal at any moment if the Government removes the stay.").  Ferrera is very much suffering the legal consequences of his conviction; his Convention Against Torture claim could be rejected at any moment, the stay could be lifted, and he could be deported to Cuba.

With such drastic legal consequences on the line, the Court finds that Ferrera has met this third and final prong of the inquiry.

## III.   Conclusion

Ferrera received ineffective assistance of counsel when his defense attorney failed to advise him that a guilty plea would subject him to mandatory deportation.  Such circumstances, combined with the lack of unreasonable delay in filing his petition and the ongoing immigration consequences of his conviction, compel the Court to grant Ferrera's petition for a writ of error *coram nobis*.

The Court acknowledges that the plea agreement entered between Ferrera and the Government includes the following provision:

> [S]hould the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred

16

by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant … .

Plea Agreement at 5.  To give the parties time to discuss next steps, the Court hereby stays issuance of the writ of error *coram nobis* until **Friday, January 22, 2021**.  The parties must provide a status report to the Court by no later than **Friday, January 15, 2021**.

**SO ORDERED.**

**Date:  December 14, 2020**                              **VALERIE CAPRONI**
**New York, New York**                                **United States District Judge**

17